UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VYDIA, INC., | |
| Plaintiff, | |
| -against- | |
| CREATOR SYNC, INC., | |
| Defendant. | |

**REPORT AND RECOMMENDATION
ON DAMAGES INQUEST**

**25-CV-5638 (GBD) (KHP)**

**TO: THE HONORABLE GEORGE B. DANIELS, UNITED STATES DISTRICT JUDGE
FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Vydia, Inc. ("Vydia") commenced this action against Defendant Creator Sync,

Inc. ("Creator") for breach of contract and, in the alternative, for unjust enrichment,

conversion, and fraudulent inducement. (ECF No. 1.)  The Complaint seeks an award of

damages pursuant to an Exclusive Content License Agreement (the "Content Agreement"), and

corresponding Advance Addendum (the "Addendum") (together, the "Agreement").  Upon

Plaintiff's application and in light of Defendant's failure to appear in or otherwise defend

against this action, on September 23, 2025, the Honorable George B. Daniels referred this

matter to the understand for a Report and Recommendation on issuance of a default judgment

and damages. (ECF No. 13.)  Plaintiff seeks damages in the amount of $160,000.00,[1] attorneys'

fees in the amount of $30,875.50, and costs in the amount of $566.42.

For the reasons stated below, I recommend that the Court enter judgment for Plaintiff

and judgment be granted in the amounts set forth below.

---

[1] Plaintiff's papers on this motion forego its claim for lost profits damages, alleged in the Complaint to total $100,000.00, though its brief in support of the motion notes it "reserves all rights with respect to" its lost profits claim. (*See* ECF No. 1 ¶¶ 36, 47; ECF No. 31, at 7 & n.2.)

1

**BACKGROUND**

It is well-settled that in light of Defendants' default, Plaintiff's factual allegations, with the exception of those related to damages, are accepted as true. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). Accordingly, the following facts are established as a result of Defendants' default:

Vydia is a corporation organized under the laws of the State of Delaware with its principal place of business in New York. (ECF No. 1, Complaint or "Compl." ¶ 12.)  Vydia operates an end-to-end technology platform and services company that provides an all-in-one platform for artists, labels, and managers to distribute, manage, and monetize their content. (*Id*. ¶ 2.)  Defendant purports to operate a platform and marketplace for musical artists to connect with influencers and generate streaming revenues and content. (*Id*. ¶ 3.)  Defendant engaged Plaintiff in connection with two musical artists:  Morae Ruffin, p/k/a Morray ("Morray"), and Jeffrey Sidhoo, p/k/a Jay Worthy ("Worthy," with Morray, the "Artists"). (*Id*. ¶ 4.)  Defendant represented to Plaintiff that it held the rights to furnish the musical content of both Artists (the "Client Content") and, based on this representation, Plaintiff advanced $160,000.00 to Defendant against anticipated royalties from exploitation of the Client Content. (*Id*. ¶ 5.)  Upon its breach, Defendant did not repay the amount advanced as required in the Agreement, leading to this action.

The particulars are as follows.  The parties entered into the Agreement on June 25, 2024, pursuant to which Plaintiff agreed to provide certain content management and royalty administration services (the "Vydia Services") to Defendant for the Client Content detailed in

2

the Agreement. (*Id*. ¶¶ 16-17; ECF No. 29 ¶ 8, Declaration of Jared Leibowitz ("Leibowitz Decl."), Exh. 1.)  This included procuring and/or providing marketing and promotional services for the Client Content (i.e., music produced by the two Artists) with an aggregate value of $10,000.00. (ECF No. 29-1, at 13, Advance Addendum.)  The Agreement provides for application of New York law on all matters relating to contract formation, interpretation, and construction, and both parties agreed to venue in New York, New York. (ECF No. 29-1 § 18.)  The Term of the Agreement was 36 months, with 12-month renewal periods. (ECF No. 1 ¶ 19; ECF No. 29-1 §§ 1, 5.)

In the Agreement, Defendant represented and warranted that it "owns or controls all valid right, title, and interest in and to the Client Content." (ECF No. 1 ¶ 18; ECF No. 29-1 §§ 3(b).)  Defendant was supposed to provide to Vydia all Client Content within five business days of the effective date of the Agreement and, thereafter, with respect to any new Client Content, within two business days after it became Client Content. (ECF No. 1 ¶ 20; ECF No. 29-1 § 8.)  In the Agreement, Defendant indemnified Plaintiff "from and against any and all damages, liabilities, costs, losses and expenses (including legal costs and reasonable attorneys' fees and costs of investigation) . . . arising out of a breach" of the Agreement by Defendant, including a breach of any warranty, representation, agreement, undertaking or covenant contained in the Agreement. (ECF 1 ¶ 21; ECF No. 29-1 § 15.)  Plaintiff also agreed to advance Defendant $160,000 as an advance against royalties on the music.  (ECF No. 1 ¶ 22; ECF No. 29-1, at 14, Advance Addendum.)  The advance was intended to be recouped in installments as the Artists received royalties on their music that Plaintiff was intending to promote. (ECF No. 29-1, at 14,

3

Advance Addendum.)  And the Agreement provided that Defendant could not terminate the Agreement until after the Client Content was delivered and the advance was recouped, except if Plaintiff breached. (*Id*. at 15 §2(b).)  In the event of a breach by Defendant, the Agreement provides that Defendant must pay back the Advance not otherwise recouped. (*Id*. at 15 § 6.)

Plaintiff provided the full payments to Defendant; however, Defendant never delivered all the Client Content to Plaintiff and, it turns out, did not have the right to deliver the content of Morray. (ECF No. 1 ¶¶ 23-26; ECF No. 29 ¶ 13 & Exh. 2.)  Plaintiff alleges had it been aware that Defendant did not have the rights to deliver Morray's content, it would not have advanced Defendant $160,000.00 or entered into the Agreement. (ECF No. 1 ¶ 27; ECF No. 29 ¶ 14.)  On March 11, 2025, Plaintiff demanded that Defendant return the $160,000.00 advanced and reimburse Plaintiff its legal costs and attorneys' fees. (ECF No. 1 ¶ 28.)  Defendant did not return the money or reimburse Plaintiff its legal costs and fees and, consequently, Plaintiff sought termination of the Agreement and repayment of the $160,000 advance. (ECF No. 1 ¶¶ 29-35; ECF No. 29 ¶¶ 16-17.)

In its motion for a default judgment and damages, Plaintiff seeks $160,000 plus pre- and post-judgment interest and its legal costs, attorneys' fees, and investigation costs it has incurred in connection with trying to recoup the money it advanced from Defendant and bringing this action.  It has attached the affidavit of its counsel, Hillel Parness, with contemporaneous billing records reflecting $30,875.50 in attorneys' fees.  (ECF No. 30, Declaration of Hillel Parness & Exh. D.)  Mr. Parness, who bills at the hourly rate of $650.00, spent 24.1 hours on this matter.  His co-counsel, Nicole Chessin, who bills at the hourly rate of

$325.00, spent 73.1 hours on this matter. (*Id*. ¶ 10-12.)  Mr. Parness also provided

documentation of costs, which total $566.42, which include a $405 filing fee to commence this

action, $155 in process server fees, and $6.42 for service of default papers. (*Id*. ¶ 13.)

## PROCEDURAL HISTORY

On July 8, 2025, Plaintiff filed the Complaint. (ECF No. 1.) On July 18, 2025, Vydia filed an

Acknowledgement of Service of the Summons and Complaint. (ECF No. 8.)  Defendant failed to

respond to the Complaint.  Consequently, Plaintiff sought and obtained a Certificate of Default.

(ECF No. 27.)  Plaintiff now moves for a default judgment and damages. (ECF Nos. 28-32.)[2]  The

motion for default judgment was served on Defendant. (ECF No. 34.)  Defendant failed to

respond to the default motion and did not appear at the hearing on this motion and inquest on

December 15, 2025. (ECF No. 35.)

## DISCUSSION

### I. Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure governs judgments against a party that

has failed to plead or otherwise defend itself in an action. *See Au Bon Pain Corp.*, 653 F.2d at

61-66 (defendant's ongoing failure to appear supported failure to plead for the purpose of

entry of default).  A default constitutes an admission of all well pleaded factual allegations in

the complaint, and the allegations as they pertain to liability are deemed true. *Greyhound*

*Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  However, a plaintiff

---

[2] Plaintiff has filed three motions for default and inquest damages on August 11, 2025 (ECF No. 10); October 31, 2025 (ECF No. 17); and November 5, 2025 (ECF No. 28).  This Report and Recommendation considers the motion filed on November 5, 2025, to supersede the other motions.  The Clerk will be directed to terminate the first two filed motions at the conclusion of this Report and Recommendation.

still bears the burden of establishing its entitlement to recovery and thus must substantiate its claims with evidence to prove the extent of their damages. *Id.* Thus, even when a defendant has defaulted, a substantive analysis of the alleged claims is required to determine whether the plaintiff may be awarded damages, and proof of damages is required. *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).

Plaintiff has satisfied the procedural requirements of Rule 55 by requesting and obtaining a certificate of default and filing a motion for a default judgment and damages. In determining whether to grant a motion for default judgment, courts within this District consider three factors: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Nespresso USA, Inc. v. Africa Am. Coffee Trading Co. LLC*, No. 15-cv-5553 (LTS), 2016 WL 3162118, at *2 (S.D.N.Y. June 2, 2016) (quoting *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007)); *see also Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455-57 (2d Cir. 2013) (applying the first two factors in review of lower court's grant of a default judgment).

All three of the foregoing factors weigh in Plaintiffs favor. First, Defendant's failure to respond to the complaint or appear in this action are indicative of willful conduct. *See Sayeg v. Azuly,* No. 14-cv-4096 (LTS) (RLE), 2016 WL 5234597, at *4 (S.D.N.Y. Aug. 12, 2016) ("By not appearing, the Court considers [defendant's] default willful."), *report and recommendation adopted*, 2016 WL 5108132 (S.D.N.Y. Sept. 20, 2016); *Indymac*, 2007 WL 4468652, at *1 (holding

6

that non-appearance and failure to respond to motion for default judgment indicate willful conduct). Further, as noted above, the Defendant had notice and an opportunity to respond, as it was served with the complaint and the default judgment papers. Second, there is no information before the Court regarding any meritorious defenses to Plaintiff's claims, because the Defendant failed to make an appearance. *See Indymac*, 2007 WL 4468652, at *1; *see also Sayeg*, 2016 WL 5234597, at *4 (holding that failure to present any evidence shows that defendant has not presented a meritorious defense). Third, Plaintiff will be prejudiced if denied the ability to seek judgment by default because it has no other means of relief against the Defendant. *See Indymac*, 2007 WL 4468652, at *1 ("Finally, denying the motion would be unfairly prejudicial to Plaintiff, because [defendants] have failed to appear, defend, or plead in response to any of the substantive allegations in Plaintiff's Complaint."); *see also Sayeg*, 2016 WL 5234597, at *4 (finding that the need to "engage in costly discovery to meet his burden of proof if the case were to proceed to trial" against an absent defendant as evidence of prejudice).

## II. Breach of Contract

The Court has reviewed the Complaint and attachments thereto and finds that Plaintiff pleaded facts sufficient to establish its claims of breach of contract under New York law (which governs under the terms of the Agreement). The elements of a New York breach of contract claim are: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages. *DeFlora Lake Dev. Assocs., Inc. v. Park*, 654 F. App'x 9, 10 (2d Cir. 2016) (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *First Invests. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (quoting

7

*Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994)); *U.S. Nonwovens Corp. v. Pack Line Corp.*, 4 N.Y.S.3d 868, 871-72 (N.Y. Sup. Ct. Suffolk Cnty. 2015).

Plaintiff has established the necessary elements of a breach of contract claim. Based on a review of the allegations in the Complaint and Plaintiff's submissions, including sworn declarations and exhibits thereto, Defendant executed the Agreement, and in so doing agreed to be bound by its terms and conditions. (ECF No. 29-1.) Plaintiff has provided an affidavit of Jared Liebowitz, which provides the agreement and receipts of payment of the $160,000 advance to Defendant. (ECF Nos. 29 & 29-2.) Liebowitz also attested that he learned Defendant did not have the rights to the Client Content of one of the artists and that Defendant never delivered Client Content after the advance was made and has refused to repay the advance. (ECF No. 29 ¶¶ 13-16.) Plaintiff has therefore established the existence of a contract, performance by Plaintiff, a breach by Defendant, and damages. Thus, Plaintiff is entitled to damages as provided for in the Agreement and under New York Law.

### III. Damages

The Agreement is governed by New York Law. (ECF No. 29-1 § 18.) Under New York law, "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007). The Court looks to the terms of the Agreement to calculate Plaintiff's damages. *JDF Cap. Inc. v. Apptigo Int'l, Inc.*, 2018 WL 2945622, at *3 (S.D.N.Y. May 8, 2018), *report and recommendation adopted*, 2018 WL 2943764 (S.D.N.Y. June 12, 2018). A plaintiff may recover consequential contract damages that are a

"natural and probable consequence of the breach." *RGI Brands LLC v. Cognac Brisset-Aurige, S.a.r.l.*, No. 12-cv-1369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. April 18, 2013) (internal quotation marks omitted); *see also Merrill Lynch & Co. Inc. v. Allegheney Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007).  Here, the damages are straightforward – they are the $160,000 Advance that was never repaid.

Plaintiff is also entitled to attorneys' fees and costs under the Agreement, because it provides for recovery of same. (ECF No. 29-1 § 15.) *See also RGI Brands LLC*, 2013 WL 1668206, at *18 (concluding plaintiff could not recover fees since the contract does not provide for such an award and there was no other basis cited for an award of attorneys' fees).  In the Agreement, Defendant indemnified Plaintiff "from and against any and all damages, liabilities, costs, losses and expenses (including legal costs and reasonable attorneys' fees and costs of investigation) ('Losses') arising out of: a breach or threatened breach by Client of any warranty, representation, agreement, undertaking or covenant contained in this Agreement, including, without limitation, any claim, demand, or action ('Claim') which is inconsistent with any of the warranties, representations, agreements or covenants made by the Client in this Agreement." (ECF No. 29-1 § 15.)  This is sufficient to justify an award of fees and costs insofar as Defendant failed to provide the Client Content, did not have the rights to provide Client Content of one of the Artists, and did not return the Advance, resulting in attorneys' fees and costs to Plaintiff and this action.

Attorneys' fee awards are typically determined using the lodestar approach, or "the product of a reasonable hourly rate and the reasonable number of hours required by the case."

9

*Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010)).  "The reasonable hourly rate is the rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.  In assessing whether an attorney's hourly rate is reasonable, courts may rely on their own knowledge of private firms' hourly rates. *See Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596 (S.D.N.Y. 2012) (citing *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir. 1987)).

In assessing whether the number of hours billed by the attorney is reasonable, courts consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted).  Plaintiff bears the burden to produce "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010); s*ee also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).

District courts exercise "considerable discretion" in awarding attorneys' fees. *See D.B. ex rel. S.B. v. N.Y.C. Dep't of Educ.*, 18-cv-7898 (AT) (KHP), No. 18-cv-7898 (AT) (KHP), 2019 WL 6831506, at *1 (S.D.N.Y. Apr. 22, 2019) (cleaned up), *report and recommendation adopted*, 2019 WL 4565128 (S.D.N.Y. Sept. 20, 2019); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *McDaniel v. County of Schenectady*, 595 F.3d 411, 414, 416 (2d Cir. 2010); *Arbor Hill*,

10

522 F.3d at 190.  However, when awarding attorneys' fees, the court must also "clearly and concisely state reasons supporting the award." *Tackie v. Keff Enters. LLC*, No. 14-cv-2074 (JPO), 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014) (awarding attorneys' fees under FLSA and NYLL) (citing *Hensley*, 461 U.S. at 437; *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014)).

Mr. Parness is a 1995 graduate from Columbia Law School and has practiced at several firms, including his own, with a focus on litigation and intellectual property.  He also has worked as an in-house counsel and taught at Columbia Law School. (ECF No. 30 ¶ 10.)  Thus, he is highly experienced and well-qualified and has pursued this action effectively and efficiently.  Nicole Chessin is a solo practitioner who also effectively and efficiently represented Plaintiff in this matter.  She graduated from Emory School of Law in 2018 and practiced at two firms prior to launching her own solo practice focused on the music, media and entertainment industries. (ECF No. 30 ¶ 11.)  Both counsel's rates are reasonable and consistent with rates awarded in this District for lawyers of their experience in connection with commercial/contract litigation and in default judgments involving this type of action. *See, e.g.*, *Wistron NeWeb Corp. v. Genesis Networks Telecom Servs., LLC*, No. 22-cv-2538 (LJL), 2023 WL 5211352, at *9 (S.D.N.Y. Aug. 14, 2023) (approving hourly rates ranging from $400 per hour for an associate with 10 years' experience to $800 per hour for named partner with 36 years' experience in a contract case).

Plaintiff's counsel has provided contemporaneous billing records, which this court has reviewed, and finds to reflect an appropriate amount of time spent on this matter. (ECF No. 30, Exh. D.)  The Court has reviewed the time and finds that it is reasonable, particularly in light of

the quality of submissions provided to the court.  Accordingly, I recommend that attorneys' fees in the amount of $30,875.50 be awarded.

Plaintiff also seeks recovery of its costs.  "An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" *Fisher*, 948 F.3d at 600 (quoting *Reichman Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)); *see also Perez Garcia v. Hirakegoma Inc.*, No. 17-cv-7608 (SLC), 2020 WL 1130765, at *13 (S.D.N.Y. March 9, 2020).  The costs of filing fees and service of process are normally reimbursable, and Plaintiff has provided sufficient evidence of incurring them.  (ECF No. 30, Exh. D.)  Accordingly, I recommend that Plaintiff be awarded $566.42 in costs.

### IV. Pre- and Post-Judgment Interest

Plaintiff also requests an award of prejudgment interest. This Court applies New York law to determine whether to award prejudgment interest because it applied New York law to the substantive claims. See *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008) ("Under New York choice of law principles, the allowance of prejudgment interest is controlled by the law of the state whose law determined liability on the main claim.") (cleaned up). Pursuant to N.Y. C.P.L.R. 5001(a), pre-judgment interest "*shall* be recovered upon a sum awarded because of a breach of performance of a contract." *Maricultura Del Norte, S. de R.L. de C.V. v. Umami Sustainable Seafood, Inc.*, 769 F. App'x 44, 52 (2d Cir. 2019) (emphasis in original) (summary order) (holding "N.Y. C.P.L.R. [] 5001(a) speaks in mandatory language.").  Thus, "[i]nterest is generally mandatory" upon a sum awarded for breach of contract. *Rhodes v.*

12

*Davis*, 628 F. App'x 787, 792 (2d Cir. 2015) (citing N.Y. C.P.L.R. 5001(a), N.Y. C.P.L.R. 5004).  New

York's C.P.L.R. provides that "[i]nterest shall be computed from the earliest ascertainable date

the cause of action existed, except that interest upon damages incurred thereafter shall be

computed from the date incurred." N.Y. C.P.L.R. 5001(b); *Aristocrat Leisure Ltd. v. Deutsche

Bank Tr. Co. Americas*, 727 F. Supp. 2d 256, 295 (S.D.N.Y. 2010) (noting prejudgment interest

ordinarily accrues from date of breach).

The Agreement states that it is "effective as of the Effective Date" but the Court could

not identify the "Effective Date" other than by reference to the dates the Agreement was

signed by the parties.  It was signed by Defendant on June 27, 2024 and signed by Plaintiff on

July 1, 2024. (ECF No. 29-1.)  Therefore, the Court uses July 1, 2024 as the Effective Date.  A

breach occurred as of that date, because Defendant made a misrepresentation when signing

the agreement (*i.e.*, that it had the rights to the Client Content, which it did not).  Therefore,

the Court uses July 1, 2024 as the date of the breach.

The statutory interest rate in New York applicable to these claims is 9%. N.Y. C.P.L.R.

5004.  At 9%, the annual interest on the principal damages sum of $160,000 is $14,400 per year

($39.45 per day). Accordingly, I respectfully recommend an award of pre-judgment interest at a

rate of 9% be awarded and calculated from July 1, 2024 through the date of entry of judgment

(assuming this Report and Recommendation is adopted).

Finally, 28 U.S.C. § 1961 provides for an award of post-judgment interest "on any money

judgment in a civil case recovered in a district court." *Schipani v. McLeod*, 541 F.3d 158, 165 (2d

Cir. 2008).  Thus, post-judgment interest is mandatory.  *See Bleecker v. Zetian Sys., Inc.*, No. 12-

cv-2151 (DLC), 2013 WL 5951162, at *2 (S.D.N.Y. Nov. 1, 2013).  Accordingly, I respectfully

recommend post-judgment interest at the statutory rate calculated by the Clerk of Court

pursuant to 28 U.S.C. § 1961.

**CONCLUSION**

For the reasons stated above, I respectfully recommend that Plaintiff be awarded: (a)

principal damages in the amount of $160,000.00; (b) pre-judgment interest on such damages,

at the interest rate of nine percent (9%; *i.e.*, $39.45 per day) from July 1, 2024 through the date

of entry of judgment; (c) post-judgment interest pursuant to 28 U.S.C. § 1961; (d) attorneys'

fees in the amount of $30,875.50; and (e) costs in the amount of $566.42.  The Clerk is

respectfully directed to terminate the motions at ECF Nos. 10 and 17 as moot.

Dated: January 15, 2026
      New York, New York

Respectfully submitted,

KATHARINE H. PARKER
United States Magistrate Judge

**NOTICE**

**Plaintiff shall have fourteen days and Defendants shall have seventeen days from this date to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) to this Report and Recommendation. If Defendants file written objections to this Report and Recommendation, Plaintiff may respond to the objections within fourteen days after being served with a copy. Fed. R. Civ. P.72(b)(2). If Plaintiff files written objections, Defendants may respond to the objections within seventeen days.**

**Objections and responses to objections shall be filed with the Clerk of Court, with courtesy copies delivered to the Hon. Gary B. Daniels at 500 Pearl Street, New York, NY 10007-1312, to the chambers of the undersigned magistrate judge, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any request for an extension of time to file objections must be directed to Judge Daniels. Failure to file timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**